**SO ORDERED.**

**SIGNED this 24 day of July, 2014.**

_Randy D. Doub_

_____

**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| **TANGLEWOOD FARMS, INC.** | **CHAPTER 7** |
| **OF ELIZABETH CITY** | **CASE NO:10-06719-8-RDD** |

     **DEBTOR.**

**JAMES B. ANGELL, TRUSTEE,**

     **PLAINTIFF,**                        **AP NO.: 12-00214-8-RDD**

     **v.**

**JESSE JOHN MORRIS**

     **DEFENDANT.**

_____

### ORDER

Pending before the Court is Plaintiff's Motion for Summary Judgment filed by James B. Angell, the Chapter 7 Trustee (the "Trustee") on April 30, 2014 the Response filed by Dr. Morris on May 23, 2014. Also pending before the Court is the Motion of Jesse Morris for Partial Summary Judgment filed by Jesse John Morris ("Dr. Morris") filed on April 30, 2014 and the Response filed

by the Trustee on May 21, 2014. A hearing was held in Greenville, North Carolina on July 7, 2014. For the following reasons, the motions for summary judgment are GRANTED.

## PROCEDURAL HISTORY

Tanglewood Farms, Inc. of Elizabeth City (the "Debtor") filed a voluntary petition for relief on August 20, 2010 under Chapter 11 of Title 11, United States Code in the Eastern District of North Carolina. On July 12, 2011, the case was subsequently converted to a case under Chapter 7 and the Court entered an Order Appointing Interim Trustee.

On August 20, 2012, the Trustee commenced this Adversary Proceeding against Dr. Morris by filing a Complaint. The August, 20, 2012 Complaint sought to recover, two transfers from Tanglewood to Dr. Morris totaling $9,943.21. Dr. Morris filed a response denying the Trustee's Complaint. After receiving leave to amend his complaint, the Trustee filed an Amended Complaint seeking to recover the following transfers made by the Debtor to Dr. Morris (the "Transfers"):

| Date | Check Number | Bank | Amount |
|------|------|------|------|
| October 29, 2009 | 25246 | Wachovia Bank | $8,433.96 |
| December 3, 2009 | 25428 | Wachovia Bank | $25,000.00 |
| December 11, 2009 | 25463 | Wachovia Bank | $25,000.00 |
| December 18, 2009 | 25522 | Wachovia Bank | $50,000.00 |
| December 21, 2009 | 25523 | Wachovia Bank | $1,511.25 |
| | | **TOTAL** | **$109,945.21** |

The Trustee filed a Motion for Summary Judgment on April 26, 2013, seeking judgment in his favor in the amount of $109,945.21. On November 7, 2013, the Court entered a Consent Order Granting Partial Summary Judgment in Favor of the Trustee (the "Consent Order") wherein the parties agreed that "the Transfers constitute a transfer of an interest of the Debtor in property that was made within 2 years before the date of the filing of the petition, and that the Debtor was

2

insolvent on the date of the Transfers." (Consent Order, ¶ 7). There was nothing in the Consent Order that constituted a determination that the Debtor received less than reasonably equivalent value in exchange for the Transfers. Therefore, the only issue before the Court to decide is whether the Debtor received less than reasonably equivalent value in exchange for the Transfers as a matter of law.

## FACTUAL HISTORY

Prior to the Debtor's Petition Date, the Debtor, a granary facility in Pasquotank County, North Carolina,  operated as a grain merchant by buying corn, wheat, and soybeans (collectively "grain") from local farmers, including Dr. Morris, storing their grain, and then selling it to various entities. The Debtor, was operated by its president and sole shareholder, James Howard Winslow ("Mr. Winslow"). In that capacity, Mr. Winslow oversaw the Debtor's purchase, sale,  and storage of grain and facilitated grain exchange between the Debtor, Winslow Farms, grain suppliers,  and purchasers. The Debtor purchased grain from Winslow Farms and stored grain Winslow Farms sold to third parties at its granary facility.

Mr. Winslow also operated a farming business in which he grew grain on land, that he owned or leased. The Debtor did not own or rent any farmland in 2009. In 2009, Mr. Winslow sold the vast majority, if not all, of his crops to the Debtor. Subsequently, on August 23, 2010, Mr. Winslow and his wife, Billie Reid Winslow, filed a joint voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Code").

The Debtor's schedules and statement of financial affairs, filed on September 3, 2010, reveal that the Debtor had total liabilities of $38,290,562.04 compared to total assets of $2,954,363.65 on the petition date. The Debtor's statement of financial affairs, however, lists gross income of

3

$20,470,302.00 in 2008, $3,000,000.00 in 2009 and $2,410,440.82 from January to August 2010.

The Debtor and Mr. Winslow have had an ongoing business relationship with one another for more than fifteen years, according to the testimony of Mr. Winslow and in the months leading up to the Petition Date, Mr. Winslow approached Dr. Morris about borrowing $150,000.00. According to the deposition testimony of Dr. Morris, Mr. Winslow was unable to secure a loan through traditional means and the money was necessary to keep the Debtor's business going. Dr. Morris obtained a loan from First Citizens Bank and, upon receipt of the loan proceeds on April 8, 2009, wrote a check payable to Mr. Winslow in the amount of $150,000.00 (the "Loan"). There was no formal loan documentation between Dr. Morris and Mr. Winslow, but they agreed that the Loan would be repaid, with interest, by August 15, 2009. Although the Loan was not paid in full by the agreed-upon date, both Dr. Morris and Mr. Winslow acknowledge that the Loan was repaid in full.

On April 9, 2009, Mr. Winslow deposited the Loan proceeds into his personal bank account. According to Mr. Winslow's accounting records and his deposition testimony, between April 9, 2009 and April 16, 2009, Mr. Winslow applied the vast majority of the Loan proceeds as follows:

4

| Date | Amount | Payee | Description |
|---|---|---|---|
| 4/9/09 | $50,000.00 | Tanglewood | A/R Tanglewood - Loan |
| 4/9/09 | $25,000.00 | Adalia Harrell | Land Rent |
| 4/9/09 | $20,000.00 | Janice Winslow | Land Rent |
| 4/9/09 | $3,713.06 | Various Employees | Payroll/Gift |
| 4/9/09 | $5,000.00 | Vandiford Farms | Labor |
| 4/9/09 | $592.07 | Winslow Enterprises | EE Lease Expense |
| 4/9/09 | $26,429.35 | River City Enterprises | Accounts Payable |
| 4/9/09 | $2,000.00 | Billie Winslow | Owner Draw |
| 4/10/09 | $500.00 | Jimmie Winslow | Owner Draw |
| 4/14/09 | $2,258.27 | Winslow Enterprises | EE Lease Expense |
| 4/14/09 | $4,700.00 | Winslow Enterprises | Accounts Payable |
| 4/16/09 | $5,000.00 | Vandiford Farms Inc. | Contract Labor |
| 4/16/09 | $746.56 | First Citizen Bank | A/R – Brent Winslow (loan) |
| 4/16/09 | $3,673.44 | Various Employees | Payroll/Gift |
| **Total** | **$149,612.71** | | |

The Debtor did repay a large portion of the Loan to Dr. Morris. The only payment that Mr. Winslow issued to Dr. Morris as a repayment on the Loan was a payment of $50,000.00 on November 16, 2009. Consequently, the Debtor made several payments to Dr. Morris in partial satisfaction of Mr. Winslow's Loan. Because of the nature of the Transfers, the Trustee seeks to recover $109,945.21 from Dr. Morris as fraudulent Transfers. Dr. Morris contends that the Debtor received a reasonably equivalent value in the amount of $76,429.35 in exchange for the transfer to the Debtor itself of $50,000.00 on April 9, 2009, and the transfer to River City Enterprises ("River City") of $26,429.35, on behalf of the Debtor.

According to the deposition testimony of Mr. Winslow, the transfer of $50,000.00 to the Debtor was to allow the Debtor to pay for operating expenses. The Trustee disputes this fact by showing to the Court that Mr. Winslow treated that $50,000.00 as a loan and Tanglewood never treated its payment to Dr. Morris as a satisfaction of an obligation to Mr. Winslow, but rather as a payment to Dr. Morris for corn and soy beans.  Mr. Winslow also testified that the transfer to River

5

City Enterprises was for an obligation that the Debtor owed for hauling grain for farmers doing business with the Debtor, which is a usual and customary practice in the granary business. The Trustee pointed out at the hearing that Mr. Winslow's testimony is inconsistent as both Mr. Winslow and Tanglewood owed separate obligations to River City Enterprises that were documented in two separate quick books, one for Mr. Winslow's personal obligations and the other for Debtor's obligations.[1]

## STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Code 7056 is proper "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is on the moving party to establish the absence of genuine issue of material fact. *Id.*

---

[1]Upon review of the deposition testimony of Dr. Morris and Mr. Winslow, along with the ledgers attached thereto, the Court finds the classification of the $50,000.00 transfer to the Debtor as "A/R Tanglewood Farms - soybeans" with the corresponding note, "Loan", is not a material fact and is not significantly probative of the intent of the real parties in interest and does not create a genuine issue of material fact. *S.E.C. v. Grossman*, 887 F.Supp. at 656 (1995), affirmed 101 F.3d 109. (On motion for summary judgment, court must inquire whether there is sufficient evidence favoring nonmoving party for jury to return verdict for that party and grant summary judgment where nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative; nonmovant must do more than simply show that there is some metaphysical doubt as to material facts.); *United States v. 5709 Hillingdon Rd., Charlotte, N.C.*, 919 F. Supp. 863 (W.D.N.C. 1996) *rev'd and remanded sub nom. United States v. Leak*, 123 F.3d 787 (4th Cir. 1997), ("There must be genuine issue for trial to preclude entry of summary judgment; if evidence is merely colorable or is not significantly probative, then summary judgment may be granted."); Fed.Rules Civ.Proc.Rule 56. Further, in his deposition testimony, Mr. Winslow states that the transfers are made at his direction (Winslow Dep. ¶9, 25; ¶10, 1-8; ¶24, 14-25*),* but the notations on the legers or "Quickbook Entries" are not made by him, nor are they made at his direction. (Winslow Dep. ¶50, 9-18). The entries were made by his then secretary, Ms. Anna Lamb, who is deceased. (Winslow Dep. ¶9, 22-24).

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party meets its threshold burden of "informing the court of its basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact," the non-moving party is obligated to identify specific facts "that might affect the outcome of the suit under governing law," thus establishing that there is a genuine issue for trial. *Id.* The court is only required to draw inferences from the record that are reasonable to make in favor of the non-moving party, and, if specific facts cited by the non-movant are insufficient to allow a jury to return a verdict in its favor, summary judgment is proper. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1992). The court then determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. *Id.* Where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and the motion must be allowed. *Matsushita v. Zenith Radio Corp.*, 575 U.S. 574, 587 (1986).

## DISCUSSION

The Trustee's claim arises from 11 U.S.C. § 548, which provides in relevant part:

(a)(1)The trustee may avoid a transfer…of an interest of the debtor in property, or any obligation…incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntary or involuntary...

(B)

(I) received less than a reasonably equivalent value in exchange for such transfer or obligations, and

7

(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]

(III) intended to incur, or believed the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured

11 U.S.C. § 548(a)(1).

In accordance with the language of 11 U.S.C. § 548(a)(1), there are four elements for the Court to consider when determining if there is a section 548 fraudulent transfer: (1) a transfer of interest of the Debtor's property; (2) made within two years prior to the petition date; (3) made while the Debtor was insolvent; and (4) made for less than reasonable equivalent value. As determined previously by this Court, the November 6, 2013 Consent Order, concedes that the first three elements are satisfied. The only remaining element for this Court to determine is whether the Debtor received reasonably equivalent value for the two transfers in question.

The Code does not define "reasonably equivalent value." It does define value as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an

8

unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. §

548(d)(2). The United States Supreme Court has held that whether a debtor has received reasonably

equivalent value depends on whether the value is substantially comparable to the worth of the

transferred property. *BFP v. Resolution Trust Co.*, 511 U.S. 531, 548 (1994).

In order to determine whether a debtor received reasonably equivalent value, a court must

undertake a two-step inquiry to compare the value received to the value of the property transferred.

*Mellon Bank, N.A. v. The Official Committee of Unsecured Creditors of R.M.L., Inc. (In re R.M.L,*

*Inc.)*, 92 F.3d 139, 150 (3d Cir. 1996); See also *Collier on Bankruptcy* ¶ 548.05.

This Court finds with regard to the first step of the inquiry, there has been at least some

value realized by the Debtor in the transfers at issue. What remains for the Court to determine

whether that value realized by the Debtor rises to the level of being considered reasonably

equivalent.

In determining whether a debtor "received [reasonably equivalent] value in exchange for a

transfer of property, courts consider whether a debtor received a benefit, direct or indirect, in return

for what it gave up." *In re R.M.I., Inc.*, 92 F.3d 203, 212 (3d. Cir. 1996).

The Fourth Circuit particularly addressed indirect benefits in *Harman v. First Am. Bank (In*

*re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479 (4th Cir. 1992). The Fourth Circuit stated that

"the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the

9

unsecured creditors." *Id.* at 487.  The court  further states that, "so long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred." *Id.* In *Bigelow*, the corporate debtor repaid the loan of its shareholders, who took out a line of credit and caused the loan proceeds to be paid to the debtor. *Id*. The corporate debtor received a credit against its note obligation to the shareholders for each payment it made to the creditor. *Id* The Fourth Circuit determined that the debtor received equivalent value for its payments because it received all of the loan proceeds and its payments corresponded with a reduction in indebtedness to its shareholders. *Id*

In applying the standard set out by the Fourth Circuit in *Bigelow*, this Court holds that the payments made by the Debtor to River City are as Dr. Morris has described them. ( Morris Dep. ¶ 15, 10-18; *see also* ¶21, 20-25; ¶22, 1, 19-25; ¶23, 1-15;¶25, 4-6*).*  The payments made by the Debtor to River City benefitted the Debtor as River City hauled the grain, a service for which River City would need to be compensated.  As a result of River City's grain hauling service, the Debtor incurred a financial obligation to River City.  Dr. Morris loaned Mr. Winslow the funds in question for the purpose of and with the intention, that those funds would be used to pay the Debtor's operating expenses.  Mr. Winslow then paid the funds to the Debtor.  Debtor used those funds to pay the Debtor's obligation to River City.  This Court finds that the funds loaned to Mr. Winslow by Dr. Morris indirectly benefitted the Debtor as those funds were used to pay for shipping obligations and

10

other operating expenses incurred by the Debtor.  Because the Debtor received an indirect benefit, the indirect benefit theory articulated by the Fourth Circuit is therefore satisfied.

As to the second issue, the transfer of the $50,000.00 from Mr. Winslow to the Debtor, both parties agree that this transfer actually happened, and that the Debtor used the money from that transfer to pay Debtor's operating expenses.  The money loaned from Dr. Morris provided an indirect benefit to the Debtor.  Therefore, the Debtor received reasonably equivalent value.

In Mr. Winslow's deposition, he clearly stated to Dr. Morris that the Loan was for Debtor's operating expenses. (Winslow Dep ¶ 29, 9-21).  In Mr. Winslow's deposition testimony he explains ledger entries that describe the allocation of the funds he loaned from Dr. Morris. (Winslow Dep. ¶ 29-31). Mr. Winslow's deposition testimony clearly shows that the transfer to the Debtor of the $50,000.00 and the payment of the Debtor's obligation to River City Enterprises in the amount of $26,429.35[2] were for Debtor's operating expenses, for which the Debtor received indirect benefit. (*Id*.). Here, the Debtor received $79429.35 for operating expenses, which is an amount reasonably equivalent to what the Debtor paid to Dr. Morris.  Therefore, to the extent of those funds, no fraudulent transfer occurred.

---

[2] The payment made to River City Enterprises, Inc. In the amount of $26,429.35 is denominated in the ledgers or "Quickbook Entries" as "Account Payable" as an obligation of the Debtor. Further,  Mr. Winslow's deposition testimony states that the Debtor, not Mr. Winslow personally, owed River City Enterprises, Inc.  For the hauling of grain.  (Winslow Dep. ¶25, 24-25; ¶26, 1-7).

Therefore, Tanglewood received reasonably equivalent value of $76,429.35. To that extent, the Motion of Jesse Morris for Partial Summary Judgment is **GRANTED** in favor of Dr. Morris. As for the Trustee's Motion for Summary Judgment, the Trustee shall have and recover of Dr. Morris, the sum of $33,515.86 and summary judgment is **GRANTED** in favor of the Trustee to that extent.[3]

**SO ORDERED**

**END OF DOCUMENT**

---

[3] The Trustee sought to recover $109.945.21 in transfers made by the Debtor to Dr. Morris alleging that the Debtor did not receive reasonably equivalent value. The Court holds that the Debtor did receive reasonably equivalent value in the amounts of the $50,000.00 transfer to Debtor for operating expenses and $26,429.35 to River City Enterprises to pay the Debtor's obligation as described above for a total of $76,429.35. Therefore the Court awards to the Trustee $33,515.86, the difference between the $109,945.21 sought by the Trustee and $76,429.35 for which the Debtor received reasonably equivalent value.